# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SCOTT SMITH,

                              Appellant,

v.

GREGORY KLEYNERMAN,

                              Appellee.

Case No. 22-CV-162-JPS
Bankr. Case No. 18-26659 BEH

**ORDER**

Appellant Scott Smith ("Smith") appeals an adverse judgment of the United States Bankruptcy Court of the Eastern District of Wisconsin before Bankruptcy Judge Beth E. Hanen. ECF No. 1. The appeal arises from the bankruptcy court's decision and order on debtor and appellee Gregory Kleynerman's ("Kleynerman") motion to (1) reopen the bankruptcy case, and (2) avoid a judicial lien on exempt personal property pursuant to 11 U.S.C. § 522(f)(1)(A) in order to avoid Smith's judgment lien on Kleynerman's interest in Red Flag Security Systems, LLC ("Red Flag"). ECF No. 2.

This appeal, originally filed on February 9, 2022, ECF No. 1, was assigned to District Court Judge Brett H. Ludwig on February 10, 2022. It was then reassigned to this branch of the Court on July 14, 2022, following Judge Ludwig's recusal. ECF No. 9. The appeal is fully briefed, ECF Nos. 6, 7, 8, and for the reasons stated below, the order of the bankruptcy court is affirmed.

## 1.     BACKGROUND

Debtor Kleynerman and creditor Smith are former business partners who have been embroiled in litigation across various courts for years. ECF

No. 1-1 at 14–15. On September 15, 2017, the Milwaukee County Circuit Court entered judgment for Smith against Kleynerman for $499,000, and the following year that court granted Smith's application for a charging order pursuant to Wis. Stat. § 183.0705 as a means of satisfying that judgment. *Id*. at 15; ECF No. 7 at 10. The charging order required Kleynerman to turn over "his future distributions and interest in Red Flag to Smith." ECF No. 1-1 at 15. The parties, as well as the Chapter 7 trustee, treated the $499,000 debt as "secured by Kleynerman's home." *Id*. at 15, 20 n.7.

On July 9, 2018, Kleynerman filed his second petition for Chapter 7 relief in the United States Bankruptcy Court for the Eastern District of Wisconsin.[1] Kleynerman scheduled his interest in Red Flag as "an exempt asset under Wis. Stat. § 815.18(3)(b), valuing it as $0." ECF No. 1-1 at 15. Smith sought, unsuccessfully in an adversary proceeding, to render the judgment debt owed to him non-dischargeable based on 11 U.S.C. § 523(a)(4). *Id*. at 15–16. On April 25, 2019, the Chapter 7 trustee "filed a statement abandoning the estate's interest" in Red Flag, noting there was $0 in lien or security interest in the property. *Id*. at 16. Kleynerman thereafter received a standard discharge, including a discharge of "any debt he owed to Smith pursuant to the Judgment." *Id*.; ECF No. 7 at 12.

---

[1] The bankruptcy court stated in its order that Kleynerman filed his second petition for Chapter 7 relief on July 8, 2018. ECF No. 1-1 at 15. Kleynerman's application for Chapter 7 relief, as provided to the Court through the supplemental transmittal of record on appeal, was executed on July 9, 2018, ECF No. 4 at 20, and is indicated in the bankruptcy case's docket text as having been filed July 9, 2018, ECF No. 2 at 1. The discrepancy in the bankruptcy court's order is immaterial for purposes of this appeal.

On February 25, 2020, Smith filed a "Motion for 2004 Examination" in the bankruptcy case. Bankruptcy Case No. 18-26659-BEH, ("Bankruptcy Case") ECF No. 52. He sought, through that motion, to acquire information related to the finances of Red Flag and Kleynerman's interest therein. *Id*. Over the course of the next several months, the bankruptcy court received briefing in opposition to Smith's motion and held a hearing thereon. Bankruptcy Case, ECF Nos. 62, 68, 72, 77. Smith also filed a supplement to the motion on April 17, 2020. Bankruptcy Case, ECF No. 70.

On May 25, 2020, the bankruptcy court denied Smith's Motion for Rule 2004 Examination. Bankruptcy Case, ECF No. 79. On June 8, 2020, Smith filed a motion for reconsideration, and the bankruptcy court denied that motion on July 28, 2020. Bankruptcy Case, ECF Nos. 81, 91.

On April 12, 2021, Kleynerman presented a bankruptcy discharge order to the Milwaukee County Circuit Court to support his application for satisfaction of the Smith judgment. ECF No. 1-1 at 16. He filed specifically for an "application for an order of satisfaction of judgment(s) due to discharge in bankruptcy" pursuant to Wis. Stat. § 806.19(4). ECF No. 7 at 14–15.

Smith objected to the application. He made a successful motion for declaratory judgment, resulting in the state court's denial of Kleynerman's application for satisfaction of the Smith judgment. ECF No. 1-1 at 16. The state court based its denial of Kleynerman's application for discharge in an opinion finding that Wis. Stat. § 806.19(4) "considers a bankruptcy discharge to satisfy judgment only against real property" and that the charging order granted to Smith in 2018 (requiring Kleynerman to turn over his future distributions and interests in Red Flag to Smith) was an interest in personal property. *Id*.

Following the state court's denial of Kleynerman's application for satisfaction of the Smith judgment, Kleynerman sought to have bankruptcy case 18-26659 re-opened and to have the bankruptcy court enter an order avoiding Smith's charging order. ECF No. 7 at 15–16. At the time that Kleynerman sought to do so, "fewer than 60 days" had passed since his bankruptcy case had been closed, and 36 days after the state court decision construing the charging order had passed. ECF No. 1-1 at 22–23. His motion to reopen and for lien avoidance was filed in the bankruptcy court on October 14, 2021. Bankruptcy Case, ECF No. 112.

The bankruptcy court held a hearing on the motion on November 23, 2021. Bankruptcy Case, ECF No. 120. On January 26, 2022, Bankruptcy Judge Hanen granted Kleynerman's motion to reopen the bankruptcy case. Bankruptcy Case, ECF No. 123. She also conditionally granted the motion for avoidance of the charging order lien on Kleynerman, reimbursing Smith for costs and fees incurred in the relevant state court litigation. *Id.*; ECF No. 7 at 16. In so doing, she concluded that "any prejudicial delay in bringing the motion [could] be alleviated by requiring the debtor to reimburse this creditor for a portion of his legal fees and costs." ECF No. 1-1 at 14.

Bankruptcy Judge Hanen held that Kleynerman had stated a "basis to reopen his case because the bankruptcy court can afford him further relief by avoiding the lien." *Id.* She further ordered that Smith's judicial lien on Kleynerman's interest in Red Flag was "avoided in its entirety pursuant to 11 U.S.C. § 522(f)(1)(A)." *Id.* at 25. Bankruptcy Judge Hanen's decision and order on Kleynerman's motion to reopen his Chapter 7 bankruptcy case pursuant to 11 U.S.C. § 350(b) and to avoid Smith's judicial lien on his interest in Red Flag under 11 U.S.C. § 522(f) form the basis for this appeal. *Id.* at 14.

Creditor-appellant Smith argues that Kleynerman's motion to reopen his Chapter 7 bankruptcy case should have been denied by the bankruptcy court for equitable reasons such as prejudice, laches, waiver, reliance, estoppel, or res judicata, and further argues that it is prejudicial for Kleynerman to avoid Smith's charging order lien. ECF No. 6 at 3. Debtor-appellee Kleynerman argues in response that the bankruptcy court did not abuse its discretion in ruling that there was a sufficient basis to reopen Kleynerman's Chapter 7 bankruptcy case, and similarly that it did not err in avoiding Smith's charging order lien. ECF No. 7 at 2.

## 2.     STANDARD OF REVIEW

In an appeal from the judgment of a bankruptcy court, a district court applies two standards of review: one for findings of fact, and another for conclusions of law. *In re Res. Tech. Corp.*, 624 F.3d 376, 382 (7th Cir. 2010). The bankruptcy court's factual findings are reviewed for clear error. *Dye v. United States*, 360 F.3d 744, 747 (7th Cir. 2004). The clear error standard is "highly deferential," *Cont'l Cas. Co. v. Symons*, 817 F.3d 979, 985 (7th Cir. 2016), and it "does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently," *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985). If the bankruptcy court's account of the evidence is "plausible in light of the record viewed in its entirety, we will not reverse its factual findings even if we would have weighed the evidence differently." *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2009); *Anderson*, 470 U.S. at 574 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Clear error exists only where, for example, the "trial judge's interpretation of the facts is implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic

evidence." *EEOC v. Sears Roebuck & Co.*, 839 F.2d 302, 309 (7th Cir. 1988). "A finding of fact is clearly erroneous only when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 447 (7th Cir. 2006).

In contrast, when a bankruptcy court's legal conclusions are challenged, the district court must make a de novo review. *In re Robert Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995). The bankruptcy court's "determination of the proper test to apply is a conclusion of law." *In re Peachtree Lane Assocs.*, 206 B.R. 913, 919 (N.D. Ill. Mar. 17, 1997). The application of that test based on the evidence presented is "a finding of fact." *Id.* (citation omitted).

### 3. RE-OPENING OF DEBTOR KLEYNERMAN'S CHAPTER 7 BANKRUPTCY CASE

#### 3.1 Legal Standard

"A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The bankruptcy court, in deciding whether to reopen a bankruptcy case, "may consider a number of nonexclusive factors in determining whether to reopen, including (1) the length of time that the case has been closed; (2) whether the debtor would be entitled to relief if the case were reopened; and (3) the availability of nonbankruptcy courts, such as state courts, to entertain the claims." *Redmond v. Fifth Third Bank,* 624 F.3d 793, 798 (7th Cir. 2010).

The decision to reopen a bankruptcy case is within the broad discretion of the bankruptcy court. *In re Bianucci,* 4 F.3d 526, 528 (7th Cir. 1993). The bankruptcy court's order is "entitled to deference" and its decision to reopen a bankruptcy case is reviewed for abuse of discretion.

*Redmond*, 624 F.3d at 798. An abuse of discretion is established only where "no reasonable man could agree with the [lower] court; if reasonable men could differ as to the propriety of the court's action, no abuse of discretion has been shown." *iHealthcare, Inc. v. Yessenow (In re iHealthcare, Inc.)*, No. 07-29612 JPK, 2011 Bankr. LEXIS 2107, at *7 (Bankr. N.D. Ind. June 9, 2011) (quoting *Smith v. Widman Trucking & Excavating*, 627 F.2d 792, 795–96 (7th Cir. 1980)).

### 3.2    Bankruptcy Court's Actions and Reasoning

The bankruptcy court granted Kleynerman's motion to reopen the bankruptcy case, noting first that Kleynerman sought to reopen the case so that the bankruptcy court could "afford him further relief in the form of lien avoidance." ECF No. 1-1 at 19. The bankruptcy court acknowledged that the "passage of time cautions against reopening when it risks prejudice to the nonmovant who has come to rely on the finality of the case closure," but determined that any such prejudice to Smith here would be appropriately alleviated by the bankruptcy court's "requiring the movant to reimburse [Smith] for his delay-related legal fees." *Id*. The bankruptcy court cited multiple cases in support of that determination. *Id*.[2]

---

[2]*See Noble v. Yingling,* 37 B.R. 647, 651 (D. Del. 1984) (finding that where debtors filed their lien avoidance action four months after discharge and before case closure, modest execution fees attributed to debtors' delay were not prejudicial; equitable solution was to allow debtors to maintain their lien avoidance action while requiring debtors to pay those costs); *In re Parker*, 64 B.R. 402, 404 (Bankr. M.D. Fla. 1986) (conditionally granting debtor's lien avoidance motion by requiring debtor to pay creditor its costs in pursuing a post-discharge replevin action in state court, where debtor waited three and one-half months after discharge to seek to avoid the lien); *In re Beshensky*, 68 B.R. 452, 455 (Bankr. E.D. Wis. 1987) (requiring debtor to reimburse costs where debtor sought to reopen case almost a year after closure to amend schedules to correct mistaken address of creditor, while creditor had incurred collection expenses).

The bankruptcy court then addressed a second relevant factor—whether the debtor would be entitled to relief if the case were reopened. The relief sought by Kleynerman was in the form of lien avoidance. *Id*. The bankruptcy court noted that "a lien may be avoided to the extent that it impairs the ability of a debtor to claim the exemptions afforded to him by 11 U.S.C. § 522(b)." *Id*. at 20 (citing 11 U.S.C. § 522(f)). The bankruptcy court further stated that "[a] lien impairs an exemption if the debtor's interest in a property is less than the combined value of the subject lien, all other liens attaching to the property, and the amount of the exemption the debtor could claim if there were no liens on the property." *Id*. at 20–21. Based on these considerations, the bankruptcy court concluded that Smith's judicial lien on Kleynerman's interest in Red Flag "remain[ed] eligible for avoidance." *Id*. at 21. This was because the value of Kleynerman's interest in Red Flag was $0, an amount apparently not objected to by Smith,[3] and because Kleynerman exempted that interest up to its maximum amount of $15,000. *Id*. (citing Wis. Stat. § 815.18(3)(b)(2)). Applying these amounts to the impairment calculation of § 522(f)(2)(A), the bankruptcy court concluded that the judicial lien could be avoided in its entirety. *Id*. (noting that the exemption amount of $15,000 plus the lien amount of $499,000 were greater than the value of Kleynerman's interest of $0 in Red Flag, resulting in the availability of lien avoidance).

---

[3]Smith disputes the valuation of $0 but concedes he did not object to it to the bankruptcy court. *See* ECF No. 6 at 18–19 (asserting that Smith did not object to the valuation because doing so would not be necessary until and unless the bankruptcy court allowed the case to be reopened). Smith argues to the Court that he "took several steps to put himself in a position to question the value of Kleynerman's interest in Red Flag but was denied by the Bankruptcy Court from doing so at every step." ECF No. 8 at 5.

Case 2:22-cv-00162-JPS   Filed 09/30/22   Page 8 of 28   Document 10

As to the third factor—the availability of nonbankruptcy courts to entertain the debtor's claims—the bankruptcy court determined that Kleynerman's only alternative for relief was "closed (pending appeal)." *Id*. at 23. Therefore, the bankruptcy court concluded that this third factor weighed in favor of reopening the bankruptcy case.

### 3.3 The Parties' Arguments on Appeal

Appellant Smith argues that it was error for the bankruptcy court to reopen Kleynerman's bankruptcy case because it is "inequitable for Kleynerman to sleep on his rights as a debtor" and that Smith is prejudiced as a result. ECF No. 6 at 9. The prejudice, he claims, consists of a substantial amount of "time, effort, costs and fees" incurred and expended through asserting his lien rights. *Id*. at 22–23.

Smith asserts that "motions to reopen are subject to equitable limitations and may be denied for equitable reasons such as prejudice, laches, reliance, estoppel or fraud." *Id*. at 21 (citing *In re Chestnut*, 50 B.R. 309, 311 (Bankr. W.D. Okla. 1985); *In re Jent*, 37 B.R. 561, 564 (Bankr. W.D. Ky. 1984)). Although Smith correctly acknowledges that there was no express time limitation for Kleynerman to bring the motion to reopen his bankruptcy case, Smith nevertheless argues that Kleynerman should have done so earlier. Smith claims that Kleynerman delayed seeking avoidance of Smith's lien since "March 2018, when Smith obtained the lien." ECF No. 6 at 22.

In response, Kleynerman argues that the bankruptcy court undertook a thorough analysis of the applicable non-exclusive factors in reaching its decision to grant the motion to reopen the bankruptcy case. ECF No. 7 at 20. Kleynerman asserts, as the bankruptcy court concluded, that by "requiring Kleynerman to reimburse Smith for all costs and fees he

incurred in the State Court Case attempting to enforce the Charging Order lien, any prejudicial effect caused by the delay in filing the Avoidance Motion has been alleviated." *Id*. at 22.

### 3.4    Analysis

The bankruptcy court, as already mentioned, exercises broad discretion in deciding whether to reopen a bankruptcy case. *In re Bianucci*, 4 F.3d at 528. While Smith may find it unfair for the bankruptcy case to be reopened, the bankruptcy court is not obligated to agree, and neither is the reviewing Court. In these circumstances, the Court cannot disturb the bankruptcy court's decision unless "no reasonable man could agree with the [bankruptcy court] . . . ." *iHealthcare, Inc.*, 2011 Bankr. LEXIS 2107, at *7 (internal quotation omitted).

The Court cannot say that the bankruptcy court abused its discretion in deciding to reopen Kleynerman's Chapter 7 bankruptcy case. The bankruptcy court considered the appropriate factors of timeliness, whether Kleynerman would be entitled to relief if the case were reopened, and the availability of nonbankruptcy courts (such as state courts) to entertain Kleynerman's claims. ECF No. 1-1 at 23. Those factors were explicitly nonexclusive, allowing the bankruptcy court to include additional considerations in its analysis. *See Redmond,* 624 F.3d at 798 (noting nonexclusivity of factors).

The bankruptcy court determined that all three of the factors enunciated in *Redmond* weighed in favor of allowing the reopening of the bankruptcy case. ECF No. 1-1 at 23. The bankruptcy court made a conclusion clearly supported by authority that any prejudice suffered by Smith could be, and would be, alleviated by payment by Kleynerman to Smith of applicable delay-related fees. *See supra* note 2 and accompanying

Case 2:22-cv-00162-JPS    Filed 09/30/22    Page 10 of 28    Document 10

text. These were not unreasonable, unsupported conclusions, and the Court has no basis to conclude that they constituted an abuse of the bankruptcy court's discretion.

It is true that "there must be some finality to a bankruptcy proceeding." *In re Krahn*, 10 B.R. 770, 771 (Bankr. E.D. Wis. 1981). But this is not a case where the debtor's delay in seeking to reopen his bankruptcy case reached an unacceptable level such that the bankruptcy court was obligated to deny Kleynerman's motion. As the bankruptcy court noted, this case is not like *In re Bianucci*, where the debtors sought to reopen their bankruptcy case two years after it was closed and seven years after the original filing. 4 F.3d at 527; ECF No. 1-1 at 22 ("[A]ny prejudice to Smith is not of the quantum contemplated in Bianucci, where the debtors waited two years to file their motion to reopen.").

Smith argued that Kleynerman delayed seeking avoidance of Smith's lien since "March 2018, when Smith obtained the lien." ECF No. 6 at 22. But the key point in time for purposes of evaluating delay is not necessarily when Smith obtained the lien. Rather, what matters according to the first *Redmond* factor is how much time passed between the time the bankruptcy case closed and the time the motion to reopen it was brought (or, alternatively, the passage of time between when the motion to reopen was brought and the point at which the movant had "actual knowledge that [the] judgment lien had never affirmatively been avoided"). *In re Bianucci*, 4 F.3d at 529. Those amounts of time here were approximately 60 days and 36 days, respectively—far from the several years' delay Smith attempts to claim. ECF No. 1-1 at 22–23. It was not until September 8, 2021, when the state court denied Kleynerman's application for satisfaction of the judgment, that Kleynerman had reason to re-open his bankruptcy case and

seek lien avoidance. *Id*. at 16. Until that time, Kleynerman apparently assumed the judgment would be discharged, not realizing that "Wis. Stat. § 806.19(4) considers a bankruptcy discharge to satisfy judgments only against real property," and that the charging order which granted Smith an interest in personal property (Kleynerman's interest in Red Flag) would therefore not be discharged. *See id.* Once the state court had so concluded, Kleynerman delayed only 36 days in bringing the motion to reopen and the motion for lien avoidance.[4]

It was within the bankruptcy court's discretion to weigh the factors enunciated in *Redmond* as the bankruptcy court found appropriate in the unique circumstances at hand, and the resulting determination is entitled to deference unless no reasonable person could agree. *In re Bianucci*, 4 F.3d at 528; *Redmond*, 624 F.3d at 798; *iHealthcare, Inc.*, 2011 Bankr. LEXIS 2107, at *7. The Court cannot conclude that no reasonable person could agree with the bankruptcy court's determination. That Smith finds the outcome unfair is not a proper ground for reversal, nor is the fact that Smith does not want the Court to reward Kleynerman for seeking the re-opening of his bankruptcy case because he is a "big boy" who shouldn't have needed to do so. ECF No. 6 at 9.

Therefore, the Court will affirm the bankruptcy court to the extent that it granted Kleynerman's motion to reopen his Chapter 7 bankruptcy case.

---

[4]The state court denied Kleynerman's application for discharge as described above on September 8, 2021, ECF No. 1-1 at 16, and Kleynerman filed in the bankruptcy court the motions to reopen and for lien avoidance on October 14, 2021, Bankruptcy Case, ECF No. 112.

4. **AVOIDING SMITH'S JUDICIAL LIEN OVER KLEYNERMAN'S INTEREST IN RED FLAG PURSUANT TO 11 U.S.C. § 522(f)**

### 4.1    Legal Standard

Under § 522(f) of the Bankruptcy Code, a debtor can avoid liens that impair an exemption claimed by the debtor. This includes judicial liens, such as those obtained by judgment. 11 U.S.C. § 101(36). Section 522(f)(2)(A) provides the applicable lien avoidance formula. It states that:

> a lien shall be considered to impair an exemption to the extent that the sum of—
>
> > (i) the lien;
> >
> > (ii) all other liens on the property; and
> >
> > (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

Also relevant is Wis. Stat. § 815.18(3)(b). That statute provides:

> (3) EXEMPT PROPERTY. The debtor's interest in or right to receive the following property is exempt, except as specifically provided in this section and [others] . . .
>
> (b) *Business and farm property*.
>
> 1. Equipment, inventory, farm products, and professional books used in the business of the debtor or the business of a dependent of the debtor, not to exceed $15,000 in aggregate value.
>
> 2. If the debtor does not claim an exemption under subd. 1., any interest of the debtor, not to exceed $15,000 in aggregate value, in a closely held business that employs the debtor or in whose business the debtor is actively involved.

The above is applicable to subsection (iii) of the Section 522(f)(2)(A) lien avoidance formula—the amount of the exemption that the debtor could claim if there were no liens on the property.

In other words, avoidance of a judgment lien is available only if the sum of that judgment lien and the exemption amount (here, $15,000) exceeds the value of the property that the lien attaches to. Furthermore, the date of valuation of an asset for purposes of determining whether it can be exempted is the date on which the petition for bankruptcy was filed. *Polis v. Getaways, Inc. (In re Polis)*, 217 F.3d 899, 902 (7th Cir. 2000).

### 4.2 Bankruptcy Court's Actions and Reasoning

The bankruptcy court concluded that Kleynerman had demonstrated that he was "entitled to avoid Smith's judicial lien under section 522(f) in its entirety, based on the formulary set forth in section 522(f)(2)(A)." ECF No. 1-1 at 24. That conclusion was based on the bankruptcy court's understanding of Kleynerman's valuation of his interest in Red Flag as $0. *Id*. "Kleynerman's valuation of his interest in Red Flag as of the petition date—$0—is less than the amount of Smith's charging order/lien [of $499,900] plus Kleynerman's $15,000 exemption under Wis. Stat. §815.18(3)(b)(2)." *Id*.

As mentioned previously, that amount of $0 was agreed upon by at least Kleynerman and the Chapter 7 trustee. *Id*. at 15–16, 21. Although Smith disputes that valuation, the parties agree, and the bankruptcy court noted in its decision and order, that during the bankruptcy's pendency "Smith did not object to that valuation." *Id*. at 21; *see also* ECF No. 7 at 24.

Although he made no proper objection to the valuation of Kleynerman's interest in Red Flag during that time, Smith had previously attempted to acquire additional information regarding "Debtor's acts, conduct, property, and financial condition, as well as potentially to the Debtor's right to a discharge" through a "Motion for an Order, pursuant to Bankruptcy Rule 2004 and Local Rule 2004, authorizing creditor to issue

Rule 2004 subpoenas." Bankruptcy Case, ECF No. 52 at 1. In support of that motion, Smith asserted that there were "serious questions about the propriety of the abandonment of the Red Flag equity interest and the discharge received by Kleynerman." *Id*. at 7. Smith claimed that "[i]n reliance on Kleynerman's assertions [that Red Flag had no value], the Trustee had not conducted any material investigation into the value of Red Flag or Kleynerman's ownership interest." *Id*. at 8. Smith also alleged that "a number of facts . . . suggest that [Kleynerman] may have taken other steps to conceal the value of his ownership interest in Red Flag." *Id*. at 10.

In support of his Rule 2004 motion, Smith attached various exhibits. He provided his own declaration, which stated that based on his historical knowledge of the business, Red Flag "generates an average profit margin in the range of approximately 60% on the upper end and 45% on the lowest end," and that in his opinion, it "appears that Red Flag likely may have known about the likely [awarding of the government contract] well before it was officially posted (even potentially prior to the Petition Date)." Bankruptcy Case, ECF No. 52-2 at 2. Smith also submitted a declaration of a certified fraud examiner and public accountant, who "determined that Red Flag had an estimated value of up to $7,776,023," although he does not therein specify at what precise time that would have been. Bankruptcy Case, ECF No. 52-3 at 2. Finally, Smith attached a Profit & Loss sheet dated July 30, 2018, which concluded the net income of Red Flag at that time was negative $77,334.82.[5]

---

[5]It is not entirely clear to the Court why Smith felt this figure supported his suspicion that Kleynerman's interest in Red Flag was greater than Kleynerman claimed.

Case 2:22-cv-00162-JPS   Filed 09/30/22   Page 15 of 28   Document 10

In response to the motion, Kleynerman (and others) filed declarations attesting that they "did not know, prior to September 28, 2018, that the government contract would be awarded to Red Flag." Bankruptcy Case, ECF No. 79 at 4 (citing ECF Nos. 62-1, 62-2, 62-3).

On May 25, 2020, the bankruptcy court denied Smith's Rule 2004 motion. Bankruptcy Case, ECF No. 79 at 12. At that time, the bankruptcy court had before it multiple objections/responses in opposition to the motion, filed by various parties including Red Flag. *See* Bankruptcy Case, ECF Nos. 55, 62, 72. The bankruptcy court had also held a hearing on the motion and the objections thereto prior to issuing its decision. Bankruptcy Case, ECF No. 77.

The bankruptcy court noted in its written denial that Smith's above-described motion was brought "[o]ver three months after the adversary proceeding case was closed and Kleynerman received his Chapter 7 discharge, but before the bankruptcy case was closed." *Id*. at 3. According to the bankruptcy court, Smith's motion had originally "failed to specify the types of documents requested," and Smith later provided a list of 25 different categories of documents he sought. *Id*. at 3, 5.

In support of its denial of the motion, the bankruptcy court wrote that it chose to exercise its discretion not to grant the Rule 2004 motion because, *inter alia*, Smith's requests were "far-reaching" and because Smith failed to demonstrate the required good cause. *Id*. at 7. The court noted the broad scope of the information sought by Smith; the "late-filed supplement" clarifying the documents sought; and the "voluminous" range of documents sought, the relevance of which had not been shown. *Id*. The burden, the court clarified, was on Smith, and Smith's counsel's statement during the hearing on the motion that "if debtor has nothing to

hide, there shouldn't be an issue" appeared to demonstrate a persistent reversal of that standard. *Id*.

As an example of the irrelevance of at least some of the information sought by Smith, the bankruptcy court noted that "Red Flag documents from 2015 through 2018 will not show how, if at all, the value of Kleynerman's percentage in Red Flag changed from the date he filed this bankruptcy case (July 9, 2018) to the date of his meeting of creditors (October 4, 2018), or to the date of his discharge (December 12, 2019)." *Id*. at 7–8. The bankruptcy court further noted in support of its decision to deny Smith's motion that there were "multiple indicia that the motion was brought with the purpose to harass Kleynerman"—for example, Smith's erroneous claim that he prevailed on misrepresentation claims in state court. *Id*. at 10.

The bankruptcy court also described many of the exhibits provided by Smith as supposing a "parade of horribles"—for example, statements such as "it appears that Red Flag likely may have known . . . ." *Id*. at 9 (quoting ECF No. 52-2 (Smith declaration)). In contrast to the tenuous speculation provided by Smith, the bankruptcy court noted that the exhibits provided by Kleynerman and Red Flag in response to Smith's motion "flatly refut[ed] Smith's conjecture . . . ." *Id*.

Following an evaluation of the record and based on its finding of "mischaracterization of the litigation history, the speculative nature of Smith's declaration, the credible nature of the three Red Flag owners' declarations, the questionable lateness of the motion . . . and the Court's conclusion that many of the above factors suggested Smith contrived the motion as a harassment device . . . plus the implicit yet informed decision

by the Chapter 7 Trustee not to take further action," the bankruptcy court denied Smith's motion for Rule 2004 examinations. *Id*. at 12.

On June 8, 2020, Smith filed a motion for reconsideration of the bankruptcy court's denial of his motion for Rule 2004 examinations. Bankruptcy Case, ECF No. 81. The bankruptcy court noted that this motion "made the same arguments" as the original motion, as well as having added "that some pre-and post-petition patent applications supported the requested relief." ECF No. 1-1 at 23 n.11. The bankruptcy court denied the motion for reconsideration as having failed to demonstrate any justification for such relief. Bankruptcy Case, ECF No. 91 at 7.

### 4.3 The Parties' Arguments on Appeal

Appellant Smith claims that it was error for the bankruptcy court to avoid Smith's charging order lien because the bankruptcy court "denied Smith's ability to dispute Kleynerman's valuation of his interest in Red Flag." ECF No. 6 at 23. Smith asserts that the bankruptcy court refused to allow Smith to take discovery, which would have enabled him to make a proper objection to Kleynerman's valuation. *Id*. at 24–25.[6] Smith claims that he later received "tax information in state court" showing that Kleynerman's interest in Red Flag was "extremely valuable," just as Smith had suspected. *Id*. at 15–16.

Smith argues that he has not waived that objection to the valuation of Kleynerman's interest in Red Flag. *Id*. at 24. Somewhat confusingly, however, Smith also argues that he did not object to the valuation during

---

[6]This assertion is in reference to the bankruptcy court's denial of Smith's motion for Rule 2004 examinations, described previously, which Smith sought in order to acquire information related to the valuation of Red Flag and Kleynerman's interest therein.

the pendency of the bankruptcy proceeding itself because it did not become necessary to object to the value of Kleynerman's interest in Red Flag "until the Bankruptcy Court allowed the Bankruptcy to be re-opened." *Id*. at 23–25. In other words, he argues both that he did not object because it was not yet necessary to do so, but also because the bankruptcy court inhibited him from doing so. *Id*. at 14. The Court is not entirely sure how those two arguments can be simultaneously true.

To put it simply, Smith takes issue with the valuation of Kleynerman's interest in Red Flag at $0 and with the bankruptcy court's calculation based thereon. *Id*. ("Kleynerman placed a $0.00 value on his interest in Red Flag, and sought to exempt 100% of its value up to the $15,000 statutory limit."). He claims that during 2018, the year that Kleynerman originally filed for bankruptcy, Kleynerman received "$356,555 in income, payments and distributions from Red Flag" and that "[b]etween 2018 and 2020, Kleynerman received $300,000 per year from Red Flag." *Id*. at 26. Therefore, he argues, Kleynerman's interest in Red Flag is certainly not $0 and "far exceeds any exemption limit and the value of Smith's Charging Order lien." *Id*. He supports this contention by arguing that if Kleynerman's interest in Red Flag was truly valued at $0, Kleynerman would have objected to, or at least "bat[ted] an eye" at, being ordered by the bankruptcy court to pay $19,810 to Smith as the condition for the charging order lien being avoided. *Id*. at 27. Smith also supports this contention by pointing to Kleynerman's objection to Smith's ultimately unsuccessful motion in the bankruptcy court seeking financial information under Rule 2004, stating that "[t]he objection itself indicates that Kleynerman's interest in Red Flag was worth more than $0.00, otherwise, why fight about it?" *Id*. at 13.

Smith asserts that a proper business valuation, accomplished by an expert in the field of business valuation, is needed and was "not allowed" by the bankruptcy court. *Id*. Smith therefore requests that the bankruptcy court's holding (finding eligibility of avoidance) be reversed, or, in the alternative, that the Court remand the case back to the bankruptcy court so that the "value of Kleynerman's interest in Red Flag can be property [sic] established in order to determine if avoidance under § 522(f) is appropriate." *Id*. at 28.

In response, Kleynerman reiterates, as Smith technically concedes and as the bankruptcy court noted, that Smith did not properly object to the $0 valuation during the pendency of the bankruptcy case. ECF No. 7 at 24 ("Smith did not contend in his Objection or at the Hearing that he was challenging the scheduled $0 value in Kleynerman's interest in Red Flag as of the petition date."). Kleynerman asserts that Smith previously had the opportunity to object to Kleynerman's valuation of his interest in Red Flag but failed to do so and thereby "waived" the argument. *Id*. at 8 (citing *Matter of Kroner*, 953 F.2d 317, 319 (7th Cir. 1992)). Smith cannot now raise that argument for the first time on appeal, Kleynerman argues. ECF No. 7 at 27–28. Although Kleynerman concedes that Smith filed a motion seeking additional information regarding Red Flag during the pendency of the bankruptcy case, Kleynerman asserts that that motion was properly denied as being both untimely and based at least partly on mischaracterization of the litigation history and the facts. *Id*. at 13.

Kleynerman concludes that the bankruptcy court did not err in granting his motion to avoid the charging order lien because it "properly applied the undisputed facts to the formula set out in § 522(f)(2)(A) . . . ." *Id*. at 26.

### 4.4 Analysis

Again, a bankruptcy court's factual determinations are reviewed for clear error. *Dye,* 360 F.3d at 747. Meanwhile, when a bankruptcy court's legal conclusions are challenged, the district court must make a de novo review. *In re Robert Sheridan*, 57 F.3d at 633.

The gist of Smith's complaint to the Court is best summarized as wanting the bankruptcy court to have reached a different determination in its § 522(f)(2)(A) calculation, by using a different dollar amount for the value of Kleynerman's interest in Red Flag—a different dollar amount that he never properly put before the bankruptcy court during the pendency of the bankruptcy case, but which he allegedly would have been able to put before it had his Rule 2004 motion been granted. Smith does not argue that the bankruptcy court utilized the wrong formula, an error that would warrant de novo review. Nor does Smith argue that the bankruptcy court applied the § 522(f)(2)(A) calculation incorrectly. He instead argues that the bankruptcy court should have plugged a different number into the calculation—again, a number based on information not clearly before it—and therefore reached a different determination.

Smith contends that the bankruptcy court inhibited him from making a proper objection on the issue of the valuation of Kleynerman's interest in Red Flag when it denied his Rule 2004 motion. He claims that he "should have been given the right to dispute the $0.00 valuation." ECF No. 6 at 23. This claim inaccurately suggests that Smith had no such opportunity. The reality is that Smith had an opportunity to properly gather the information he sought related to Red Flag and Kleynerman's interest therein, and, as far as the bankruptcy court was concerned, he failed to

utilize that opportunity appropriately. As a result, any dispute Smith may have had regarding the $0 valuation of Kleynerman's interest in Red Flag was never properly objected to before the bankruptcy court.

The first issue the Court should address here is Kleynerman's assertion that Smith is barred from raising the valuation dispute to the Court at all. Kleynerman cites *Matter of Kroner*, 953 F.2d 317 (7th Cir. 1992) in arguing that, because "Smith never disputed (or requested an opportunity to dispute) the scheduled petition date value of Kleynerman's interest in Red Flag," the issue of its valuation is "waived on appeal." ECF No. 7 at 28. Further, Kleynerman argues, any argument Smith may believe he made to the bankruptcy court on this issue should similarly be deemed waived, because "[a]rguments that are undeveloped, conclusory, or not properly supported by relevant legal authority in the trial court are also waived on appeal." *Id.* (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991); *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008)). In response, Smith asserts that he *did* attempt to dispute the valuation—through his Rule 2004 motion, which the bankruptcy court denied.

So, is Smith barred from raising this argument to the Court? To assert, as Kleynerman has, that Smith not only did not dispute, but further did not request an "opportunity to dispute," ECF No. 7 at 28, Kleynerman's interest in Red Flag seems a stretch. Smith did not, as he himself concedes, object to the valuation. But he did seek an opportunity, through his Rule 2004 motion, to gather additional information related to Red Flag's valuation, ostensibly so that he could acquire a more concrete basis upon which to object to the valuation of Kleynerman's interest. Acquiring that information, Smith claims, would have enabled him to "determine an

accurate value of Red Flag." ECF No. 8 at 13. The question would therefore be whether the filing of that Rule 2004 motion constitutes having raised the issue.

As an initial matter, although the parties both refer to the concept of "waiver" in their briefing, it appears that the concept they intend to discuss is that of forfeiture. Parties and courts alike commonly, and erroneously, use the terms interchangeably, as Kleynerman and Smith have done here. Waiver refers to an "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). In contrast, forfeiture refers to "the failure to make the timely assertion of a right," due either to inadvertence, neglect, or oversight. *Id*. (internal citations omitted); *Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) (internal citation omitted).

Kleynerman appears to argue that, by Smith's failure to properly raise the issue to the bankruptcy court, he is subsequently barred from raising it to this Court. Kleynerman does not appear to argue that Smith made, during the bankruptcy proceedings, any *intentional* relinquishment or abandonment of his opportunity to dispute the valuation issue. As such, the appropriate concept in these circumstances is technically that of forfeiture, not waiver.

The substantive significance of the distinction between forfeiture and waiver in civil cases is far less than in criminal cases, however—particularly outside of the context of plain-error review. *See Henry,* 969 F.3d at 786 (quoting *Williams v. Dieball,* 724 F.3d 957, 961 n.2 (7th Cir. 2013) (discussing the distinction's implications on plain-error review)). Since plain-error is not argued here, the Court's conclusion will not differ regardless of whether the parties' argument is construed in terms of waiver or forfeiture. *See Williams,* 724 F.3d at 961 n.2 ("[W]hether plain error review

applies in the civil context does not depend solely on whether an argument was intentionally abandoned (waived) or inadvertently not raised (forfeited).").

It is not clear whether the filing of Smith's Rule 2004 motion during the bankruptcy proceedings constitutes having raised the issue of the value of Kleynerman's interest in Red Flag for purposes of avoiding forfeiture. "A defense or objection that is not raised by motion or in the responsive pleading is [forfeited] unless it is protected by Rules 12(h)(2) or 12(h)(3) or by [amendment]." *Kontrick v. Ryan*, 540 U.S. 443, 459 (2004) (internal quotation omitted). Smith did make a motion, which is a proper avenue for reserving an argument for appeal. The question would therefore be whether the content and substance of that motion sufficed to constitute having raised the issue. But the Court need not delve into the weeds of that analysis because, regardless of whether forfeiture on the issue occurred, it is the Court's opinion that the outcome is the same. Even if Smith did not forfeit the valuation argument, and therefore can properly raise it before the Court, the Court is not compelled by it now. The bankruptcy court thoroughly considered Smith's Rule 2004 motion and evaluated the request from the angles of various factors, each of which, it concluded, weighed against granting Smith's motion. *See* Bankruptcy Case, ECF No. 79.

The Court has no basis to conclude that the bankruptcy court's determination on that motion was incorrect or that it inappropriately or unfairly deprived Smith of his chance to contest Kleynerman's interest in Red Flag. That Smith was unsuccessful in that attempt to acquire information that he believed would allow him to properly object to the valuation of Kleynerman's interest in Red Flag is not a proper basis for the Court to provide Smith the relief he seeks—either a reversal on the

bankruptcy court's decision that Smith's $499,000 lien was avoided in its entirety, or a remand on the issue for a do-over.

The Court is constrained by the boundaries of the standard of review. A reviewing court's determination that it might have weighed evidence differently, and landed at a different conclusion accordingly, is not a proper basis for reversal where the lower court's determinations were based logically on a plausible evaluation of the record before it. *See Freeland*, 540 F.3d at 729 ("If the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, [the court] will not reverse its factual findings even if [it] would have weighed the evidence differently."). It is the Court's opinion that the bankruptcy court made an entirely logical and plausible evaluation of the record in denying Smith his request for Rule 2004 examinations.

Smith's contention that the bankruptcy court's decision and order granting Kleynerman's motion to reopen and for lien avoidance "failed to consider Smith's position" is simply false. ECF No. 6 at 20. As has already been described, the bankruptcy court "considered Smith's position" on multiple occasions—on his Rule 2004 motion, on his subsequent motion for reconsideration, and on the motions that resulted in the decision and order that Smith now appeals. Smith's dislike of the outcome in each of those instances does not, as Smith now asserts, equate to a failure by the bankruptcy court to consider his position at all. This assertion is an inappropriate mischaracterization of the bankruptcy court's order.[7]

---

[7]This is not the first time that Smith has misconstrued aspects of the proceedings. *See* Bankruptcy Case, ECF No. 79 at 12 (noting in decision and order on Smith's Rule 2004 motion that Smith had mischaracterized the litigation history).

The bankruptcy court's usage of $0 as the figure for Kleynerman's interest in Red Flag for purposes of completing the lien avoidance formula is a factual determination entitled to deference by the reviewing court. As mentioned previously, factual determinations are reviewed for clear error. *Dye,* 360 F.3d at 747.

The bankruptcy court used the $0 figure in its § 522(f)(2)(A) calculation because: 1) that is how Kleynerman valued his interest when he scheduled it as an exempt asset;[8] 2) the Chapter 7 trustee also estimated the value of Kleynerman's interest as $0 and abandoned its interest in Red Flag based on that estimation;[9] and 3) Smith never properly objected to that valuation during the pendency of the bankruptcy proceeding. ECF No. 1-1 at 15–17, 21. Based on all this, the bankruptcy court's resulting determination was entirely plausible and logical. *See Freeland,* 540 F.3d at 729 ("If the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, [the court] will not reverse its factual findings even if [it] would have weighed the evidence differently."). It is not this Court's place to disturb that finding in the face of its plausibility. The Court will not reverse the bankruptcy court's finding, nor remand the case so that Smith can try again, where Smith never properly put before the bankruptcy court the information Smith claims was critical.

---

[8]*See* ECF No. 4 at 25 (listing 51% interest in Red Flag Cargo Security Systems, LLC at $0.00); *Id.* at 30 (listing 51% interest in Red Flag as exempt and citing Wis. Stat. § 815.18(3)(b)).

[9]*See* Bankruptcy Case, ECF Nos. 38 at 2 (listing trustee's estimated value of "NON-PUBLICLY TRADED STOCK AND INTERESTS: Red Flag Cargo Security Systems, LLC" at $0) and 44 at 2 (same). Furthermore, at no point following the trustee's abandonment of that property (Kleynerman's interest in Red Flag) was the trustee's determination on that issue changed as a result of Smith's contentions as to its valuation.

At a certain point, public policy dictates that there must be an end to the attempted relitigation of issues that were or could have been raised previously. *See Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). It is the Court's opinion that this is one such case. Smith attempted to seek information related to Red Flag's valuation through his Rule 2004 motion, and that motion was denied. He sought reconsideration of that denial, and that motion was denied. Finally, he came before the Court seeking relief from the bankruptcy court's order avoiding the lien in its entirety based on a valuation of Kleynerman's interest at $0. The Court now concludes that Smith has reached the end of the line on this issue.

Therefore, the Court will affirm the bankruptcy court to the extent that it conditionally granted Kleynerman's motion for lien avoidance.

5. **CONCLUSION**

Smith failed to convince the bankruptcy court of his version of the facts. Because he was unsuccessful in convincing the bankruptcy court that he would be prejudiced by the reopening of Kleynerman's bankruptcy case, and that Kleynerman's $0 interest in Red Flag was "suspect," he appealed the bankruptcy court's decision and order to this Court so that he could try again. Smith does not get to try again unless he demonstrates that the bankruptcy court's fact-finding, and application of those facts, was erroneous, or that the bankruptcy court made a legal error. This he has not done, and so the Court must affirm the order of the bankruptcy court.

Accordingly,

**IT IS ORDERED** that the order of the bankruptcy court under review, Bankruptcy Case, ECF No. 123, be and the same is hereby **AFFIRMED**; and

**IT IS FURTHER ORDERED** that this matter be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th of September, 2022.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge